ANGELINA CRIVELLO & others[1] *vs.* ALL-PAK MACHINERY
SYSTEMS, INC., & another.[2]

Essex. March 7, 2006. - May 16, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Interpreter. Evidence,* Demonstration, Accident.

At a civil trial, the plaintiff and her husband were not entitled to an interpreter
as a matter of law, where they failed to meet the threshold requirement of
G. L. c. 221C, §§ 1-3, that they have difficulty understanding English.
[732-736]

In a civil action for negligence and breach of warranty, arising from an injury
that the plaintiff sustained while operating a bagging machine manufactured
and distributed by the defendants, the judge did not abuse his discretion in
allowing the defendants to demonstrate with a bagging machine that was
different from the machine at issue, where the plaintiff had notice that the
defendants might demonstrate the use of the machine, where the machines
were substantially similar and the plaintiff's counsel cross-examined the
defendants' expert regarding the differences in the machines, and where
the judge twice instructed the jury concerning the meaning of the
demonstrations [736-737]; further, the judge did not abuse his discretion in
excluding evidence of prior accidents on the machine at issue, where noth-
ing in the record indicated that the defendants were aware of any accidents
with the machine [737-739]; finally, the judge did not err in denying the
plaintiff's motion for a new trial [739].

CIVIL ACTION commenced in the Superior Court Department on
November 24, 1995.

The case was tried before *Howard J. Whitehead,* J., and a
motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

---

[1]Gratzia Crivello and Maria Crivello, by their mother and next friend Ange-
lina Crivello; and Antonio Crivello. We shall refer to Angelina Crivello as the
plaintiff and Antonio Crivello as the husband.

[2]Pacemaker Packaging Corp. (Pacemaker). Pacemaker was the manufacturer
of the bagging machine at issue in this action and All-Pak Machinery Systems,
Inc. (All-Pak), was the distributor. Because All-Pak put its name on the
machine in question, it was treated on the same footing as Pacemaker. We
shall refer to both defendants as having manufactured the machine.

*Paul L. Kenny (Richard C. Chambers, Jr.,* with him) for the plaintiff.

*Myles W. McDonough* for Pacemaker Packaging Corp.

*Nicholas Grimaldi* for All-Pak Machinery Systems, Inc.

IRELAND, J. We transferred this case to this court on our own motion to interpret G. L. c. 221C, §§ 1-3, which provides a right to the assistance of an interpreter to non-English speakers who have difficulty speaking and understanding English. The plaintiff, an Italian immigrant, claimed that a bagging machine manufactured by the defendants (see note 2, *supra*) caused her severe injury. A Superior Court jury returned verdicts for the defendants on the plaintiff's claims of negligence and breach of warranty.[3] The plaintiff appealed. She asserts that she was entitled to an interpreter at trial as a matter of law,[4] and claims that the trial judge erred during trial by allowing demonstrations on a bagging machine that was different from the machine at issue and failing subsequently to give sufficient jury instructions; by barring testimony of certain witnesses; and by denying her motion for new trial. Because we conclude that the plaintiff and her husband are not non-English speakers within the meaning of G. L. c. 221C, §§ 1-3, and that there is no merit to the plaintiff's other claims of error, we affirm.

*Facts and procedural background.* We present essential facts, reserving certain details for our discussion of the issues raised. The plaintiff worked for a company in Gloucester and operated a machine that sealed T-shirts inside plastic bags. The machine was manufactured by the defendants. In April, 1993, the plaintiff's left hand was caught in the machine which, her supervisor observed, left swelling and redness between the knuckles. The plaintiff visited Beverly Hospital within one day of the injury. The evidence from medical records was that she had a contusion with a sprain to her left hand and left wrist, and that she was given a wrist splint.

At trial, the plaintiff alleged that she caught her left hand,

---

[3]The verdicts rendered moot the claims of the husband and daughters for loss of consortium.

[4]The husband, also an Italian immigrant, argues that he was likewise entitled to an interpreter.

arm, and shoulder in the bagging machine,[5] which caused a "crush" injury that eventually developed into a condition that rendered her left arm and hand unable to function. She also claimed that she is in constant and severe pain and, as a result of treatment for the pain, has difficulty walking. The essence of the defense was that the machine was properly designed and that the plaintiff was malingering either deliberately or because of some psychiatric problem.[6]

During the plaintiff's testimony, the judge had to warn the plaintiff repeatedly to contain her outbursts and to answer the questions asked, especially on cross-examination. The judge threatened her with contempt after she interjected, "That's not true," during one of the defense counsel's opening statement after he stated, in essence, that there were no complaints about the machine in question.[7] The next day, the plaintiff was held in contempt of court and fined $300 after the defendants moved to strike her testimony or dismiss the case because of another outburst on cross-examination. Instead of answering the questions asked, as the judge had directed, she took the opportunity to allege that a doctor retained by the defendants to examine her "beat [her] up," stating, inter alia, that she called the Federal Bureau of Investigation and the Gloucester police. She also stated to defense counsel, "[Y]ou pay no damage for — no medication — okay, don't do that," and interrupted the judge when he tried to stop her testimony.

After stating that he and another judge, see note 7, *supra*, had warned her and that the question whether her actions were entirely on her own free will was relevant, the judge stated, in pertinent part:

"I take note of the fact the [the plaintiff] is relatively

---

[5]She also claimed that her right hand became trapped in the machine, but she was able to free it.

[6]The plaintiff received workers' compensation benefits and a lump-sum settlement for her injury.

[7]The judge also stated that his warning that she would be held in contempt if she made "another such comment . . . comes in the backdrop of a prior warning from [another judge] about inappropriately contacting witnesses and [defense] counsel before the trial began." The earlier warning was generated by the defendants' motion to dismiss the case in response to this pretrial behavior.

uneducated. . . . [S]he is somewhat limited by language. So I assume that has limited her life experiences, as well. On the other hand I observe that she is not a stupid person. She is well informed as to the circumstances of this case, and she appears well informed as to what the significant bits of evidence are in this case. I also take note of the fact that after [my warning] yesterday morning, she did alter her behavior . . . She's been alert during her testimony. She has been engaged with counsel both for the plaintiff and for the defense during her direct and cross-examination. . . . So what I find is someone who, although relatively uneducated and maybe somewhat limited in life experience, is intelligent enough to appreciate the significance of her actions and who does appear to have the ability to control them when threatened with a sanction if they continue."

After trial, the judge denied the plaintiff's emergency motion for a new trial, in which she argued that the jury did not receive all the exhibits in the jury room before they returned their verdicts, that the judge's instructions to the jury concerning the demonstrations on the bagging machine were ineffective, and that the judge erred in barring the testimony of other people who were injured by the machine.[8]

*Discussion. 1. Applicability of G. L. c. 221C, §§ 1-3.* Both the plaintiff and her husband are immigrants from Italy who arrived in the United States in 1970 and 1976, respectively. The husband, a fisherman by trade, testified that he obtained a certificate so the he could captain a boat in the United States. He and the plaintiff at one time owned numerous properties and there was testimony that the plaintiff appeared in court more than once representing the family's real estate trust in actions against certain of their tenants. They testified and were cross-examined in English without the use of an interpreter. The plaintiff's counsel did not request an interpreter.

General Laws c. 221C, § 2, grants a "non-English speaker, throughout a legal proceeding, . . . a right to the assistance of a

---

[8]The judge noted that counsel "obtained permission from the Court to send copies of the medical records exhibit [at issue] to the jury room. However, counsel took more than one hour after the jury retired before even a fraction of those copies had been prepared. A verdict was returned in the interim."

qualified interpreter who shall be appointed by the judge." Section 1 defines "[n]on-English speaker" in relevant part as "a person who . . . has difficulty in speaking or understanding, the English language, because he uses only or primarily a spoken language other than English."

For the first time on appeal, the plaintiff and her husband argue that they "are unable to read or [write] English, and have limited ability to speak and a more limited ability to comprehend the English language." They claim that the judge was on notice of the language problem and that he erred when he did not, sua sponte, appoint an interpreter or hold a hearing to determine whether an interpreter was necessary.[9] There was no error. The plaintiff and her husband have not demonstrated that they met the statute's threshold requirement that they be non-English speakers.

It is true that, at trial, the plaintiff asked for some words to be clarified or questions to be repeated and that she testified that she does not know how to write English and does not read English. Her husband testified that he does not speak English well.

However, the record belies the claim that either the plaintiff or her husband had "difficulty in speaking or understanding, the English language." There was testimony not only that the plaintiff appeared in court representing the family's real estate trust, but also that she explained her medical condition to numerous doctors. Her own testimony reveals that she was able to correct defense counsel's claim that her petition for bankruptcy protection was filed under Chapter 7 (stating that it was filed under Chapter 11); that she clearly explained her job[10]; and that, at least once, she corrected technical terms referring to parts of

---

[9]The defendants argue that this argument is waived, because the plaintiff did not raise it below. The plaintiff asserts that, pursuant to G. L. c. 221C, § 3 (b) ("failure of a non-English speaker to request an interpreter shall not be deemed a waiver of such right"), counsel's failure to request an interpreter cannot be deemed a waiver by the plaintiff. We agree that the plain language of § 3 indicates that if the plaintiff were determined to be a non-English speaker under the statute, the failure to request an interpreter would not constitute a waiver for appeal.

[10]For example, she stated and demonstrated the following concerning how she operated the bagging machine: "I was standing here. So, from there, the tee shirts used to travel and reach where I used to stand, okay, took the tee

the machine in question.[11] The record also indicates that on those occasions where the plaintiff did not understand a question, she requested, and received, clarification.

Relevant to his loss of consortium claim, the plaintiff's husband was able to describe what their life was like before and after the injury. In addition, he clearly explained that he lost numerous properties he and the plaintiff used to own.

To bolster her claim that she was harmed by the lack of an interpreter, and that the judge was put on notice of the language problems, the plaintiff focuses on the fact that, at one point, the judge stated that she had a heavy accent and that he could not understand everything she said.[12] In addition, the plaintiff's attorney did ask the judge to consider an interpreter, which the judge rejected.

The judge's comment about his ability to understand the plaintiff was made while he was considering whether to grant the defendant's renewed motion to strike the plaintiff's testimony after the plaintiff had another outburst. In response to defense counsel's attempt to read from a medical record, the plaintiff indicated her disagreement with the report, stating:

> "So somebody fool around with the medical record. . . . I want to go home, because I can't stand — I

shirts. The plastic bag used to be puffed up right there. Okay. And I used to slide the tee shirts inside. My two hand open like that, slides inside, hold the plastic bag from left side and for right side, straight like this, making sure no wrinkles. So then the sealer bar used to come down, and then you can release the bag. When the sealer bag . . . come down. When the sealer bar come down, then it's okay to release the bag. If you don't, there will be all wrinkles."

[11]The plaintiff argues on appeal that she cannot read English. Although we do not see this as relevant to whether the statute covers the plaintiff and her husband, we note that the record shows that the plaintiff testified both that she did not read English and that she did not read "much." She was reading documents at trial, although her ability to do so was limited and counsel often read the contents of documents to her.

[12]The judge stated, "Now, I have to confess much of [the plaintiff's] testimony is unintelligible to me. And I don't mean that facetiously. She has a very heavy accent, she's speaking softly, and I'm not getting it all. But what I did hear was the comment, 'I don't want to be here anymore,' something like 'I don't want to hear from this lawyer, I don't want to talk to this lawyer any more.' I didn't quite get the rest of it. But I know the thrust of it was 'I don't like what this lawyer is doing to me.' "

don't want to listen. I don't want to go to jail, too young for this. . . . What are you doing? I can't stand no lies. What do I do?"

The plaintiff argues, in particular, that the judge's statement shows that no one could understand the plaintiff. The record does not support this argument. As discussed, the judge found that the plaintiff understood and was well informed concerning what evidence was significant to her case when he found her in contempt, allowing the inference that the judge could understand the plaintiff. A review of the record shows that the judge occasionally asked the plaintiff to repeat things he may not have understood, but it is clear that he did understand her. In addition, a juror asked that the plaintiff repeat what she said, indicating that jurors would have felt free to indicate if they did not understand her or her husband. Finally, the judge occasionally restated what the husband said when he spoke too fast and, when he did not understand the husband, the judge asked the husband for clarification.

The request by plaintiff's counsel for an interpreter came after the plaintiff and her husband had testified. The issue was whether an out-of-court statement the plaintiff allegedly made to her work supervisor would come in as an admission.[13] Counsel for the plaintiff argued, in essence, that the alleged admission could have been due to the plaintiff's English language skills, i.e., that the particular words the plaintiff chose in response to the supervisor were only because she was not a native speaker, and that the words did not have the meaning the defendants were trying to assign them.[14] Moreover, counsel stated that the plaintiff did understand what was going on at trial and what was being asked.

Given the circumstances, we conclude that the plaintiff and her husband were not entitled to an interpreter because they failed to meet the statute's threshold requirement that they have difficulty understanding English. See generally *United States* v.

[13]The plaintiff's work supervisor told the plaintiff that someone had seen her moving furniture the day after her injury and the plaintiff's alleged response was, "Who saw me?"

[14]In any event the point was moot when the supervisor did not remember the plaintiff saying those exact words.

*Carrion*, 488 F.2d 12, 15 (1st Cir. 1973), cert. denied, 416 U.S. 907 (1974) ("It would be a fruitless and frustrating exercise for the appellate court to have to infer language difficulty from every faltering, repetitious bit of testimony in the record").

2. *Trial errors.* a. *The demonstration.* Over the plaintiff's objection, the judge allowed the defendants to demonstrate with a bagging machine that was different from the machine at issue.[15] Both the manufacturer of the machine and a defense expert demonstrated its use.

The plaintiff argues that allowing these demonstrations was an abuse of discretion because the machine was not similar; the judge allowed too many demonstrations; there was no notice that the machine would be used so that her expert could examine it and the judge should have waited, at least, until the expert was in the court room; the machine in the court room had a warning label on it; and the test was not under the same conditions, especially the lack of a heating element. Furthermore, she argues that the limiting instruction to the jury was insufficient, as was the judge's instruction on drawing inferences from the use of the machine for the demonstration.

It is in the judge's discretion to grant "permission to perform or make experiments or illustrations," *Commonwealth* v. *Flynn*, 362 Mass. 455, 473 (1972), quoting *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 260 (1933), and to determine "[w]hether the conditions were *sufficiently similar* to make the . . . [experiment or demonstration] of any value in aiding the jury" (emphasis added), *Commonwealth* v. *Flynn, supra*, quoting *Field* v. *Gowdy*, 199 Mass. 568, 574 (1908). There was no error.

Although the plaintiff's counsel claimed at trial that he did not receive notice that an actual machine might be used to demonstrate its operation (rather than a videotape of the machine in operation), this claim is not supported in the record. Defense counsel stated that he might bring in the machine if the judge restricted the content of the videotape of the machine's operation. Indeed, plaintiff's counsel agreed that if it were practical, defense counsel should be allowed to bring a machine

---

[15]We glean from the record that the machine at issue was no longer available. We also note that the plaintiff demonstrated on a "semi-model" of a machine.

in.[16] Thus, this argument is frivolous. In addition, concerning the number of demonstrations on the machine, at one point, the plaintiff's counsel asked that a defense expert demonstrate on the machine rather than answer defense counsel's questions which, plaintiff's counsel argued, would involve characterizations of the plaintiff's testimony. Moreover, there was testimony that the machines were substantially similar. The plaintiff was free to explore any differences between the machine that defense counsel demonstrated and the machine in question, using the photographs the plaintiff's expert took of the machine. In fact, the plaintiff's counsel asked about the labels and other differences, including an electric eye and hood as options, and used the machine to have the defense expert demonstrate on cross-examination.

As for the plaintiff's argument that the judge's instructions were insufficient, the judge instructed the jury twice concerning the meaning of the demonstrations, once when the owner of the company that manufactured the machine put his hand into it without injury and once during the defense expert's testimony.[17] The instructions were clear and we presume that the jury followed them. See *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 870 (1993); *Roberts* v. *Southwick*, 415 Mass. 465, 473 (1993). There was no abuse of discretion or other error.

b. *Prior accidents.* The judge excluded evidence of prior accidents on the machine. The plaintiff argues that she should have been allowed to present such evidence in her case-in-chief,

---

[16]The plaintiff's counsel also stated that, although he did not object to the machine's being used as a demonstration, he did not want people placing their hands in the machine.

[17]The judge told the jury that the demonstration was to show how the machine and its safety features operated. He stated that it was not a reenactment of the event and that the fact that no one was injured during the demonstration was not evidence that no one could be hurt by the machine. He also stated that there were variables in the circumstances between the plaintiff's testimony about her accident and the demonstration, including that the machine's heating element was not on during the demonstration, the person's physical make up and build, the person's sensitivity to pain, whether the person was expecting the machine to "come down" and efforts a person made to "get out" of the machine.

as well as in rebuttal. The plaintiff further argues that the judge erred in declining to give an instruction concerning statements made by defense counsel in their openings to clear up any misconception that no one had ever been hurt by these machines. There was no abuse of discretion.

It is in the discretion of the judge whether to admit evidence of prior accidents. Such evidence is not viewed favorably by courts unless there is "substantial identity in the circumstances . . . and the danger of unfairness, confusion or undue expenditure of time in the trial of collateral issues reasonably seems small." *Robitaille* v. *Netoco Community Theatre of N. Attleboro, Inc.*, 305 Mass. 265, 268 (1940). The record shows that defense counsel stated that he wanted to introduce the evidence in rebuttal only.[18]

The plaintiff argues that she should have been allowed to introduce rebuttal evidence of prior accidents to show the defendants' knowledge of the dangerousness of the machine. This argument has no merit. The plaintiff points to nothing in the record indicating that her alleged evidence would demonstrate that the defendants were aware of any accidents with the machine. The plaintiff's only statement about the evidence of prior accidents was that women had caught their fingers in the machine and one woman had lost a fingernail.[19] Moreover, the

---

[18]The judge had granted the defendants' motion in limine to preclude reference to any prior complaint or accidents. At trial, apparently in reference to this motion, the plaintiff's counsel stated that he did not disagree with the judge's ruling.

[19]One of the plaintiff's arguments is that she should have been allowed to introduce the evidence through the plaintiff's supervisor, who allegedly knew that two other women had caught their hands in the machine. The plaintiff has not demonstrated that even if the supervisor knew of other people being caught in the machine, that the defendants also knew. The judge stated that even if there was some awareness, he did not believe it would be admitted in evidence, but he did not state the reason. Given that the plaintiff testified that she caught her left hand, arm, and shoulder in the machine and was trapped for over ten minutes, the other accidents, to the extent described by plaintiff's counsel in his offer of proof ("[T]hese ladies had their fingers caught in the machine. At least one of them lost her fingernail"), are not sufficiently similar for us to conclude that the judge abused his discretion in excluding the evidence. *Robitaille* v. *Netoco Community Theatre of N. Attleboro, Inc.*, 305 Mass. 265, 268 (1940).

plaintiff's argument that there was an abuse of discretion is premised on the assertion that the machine demonstrations were prejudicial, which we have rejected.

The plaintiff also argues that she should have been allowed to offer the evidence in rebuttal to statements defense counsel made in their opening arguments, about the fact that no complaints had been made about the machine, and that no one had been injured. She also claims that the judge erred in not giving a promised curative instruction to counter the claim that no one had been injured.[20] There was no abuse of discretion.

The judge stated that he would give a curative instruction if the defendants offered evidence that they were not aware of any injuries, to the effect that such evidence would not be evidence that no one was ever injured. The judge's statement was made in the context of preventing the plaintiff's counsel from attempting to use the plaintiff's testimony to bring in evidence that other people were injured by the machines.[21] Ultimately, the judge declined to give the instruction, stating that the occasion of the defendants' claiming they were unaware of any injuries never arose. The judge noted that it was better not to call the jury's attention to defense counsel's opening statement so long after the fact and pointed out that the only evidence of other accidents was the plaintiff's "outburst." See note 21, *supra*. The plaintiff has not indicated any evidence in the record that the defendants made such an argument requiring the curative instruction, and thus has not demonstrated an abuse of discretion by the judge.

c. *Motion for a new trial.* The plaintiff also argues that the judge erred by denying her motion for a new trial. There was no error. The grounds she offers have been addressed and we need not reiterate them here.

*Conclusion.* For the reasons set forth above, we conclude that

---

[20]The judge declined to give a curative instruction concerning the statement to which the plaintiff responded, "That's not true," precisely because of her outburst.

[21]In response to the question, "Did you ever observe anybody else get their fingers caught in the — ," the plaintiff responded, "Yes, so many people —," after an objection by defense counsel.

the plaintiff and her husband were not entitled to an interpreter, and that there is no merit to the plaintiff's other claims of error.

*Judgment affirmed.*