NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-1277                                    Appeals Court


COMMONWEALTH vs. JOSEPH ELLIOTT.


No. 11-P-1277.

Essex.    January 7, 2015. - June 17, 2015.

Present:  Kafker, Meade, & Maldonado, JJ.


Rape.  Indecent Assault and Battery.  Practice, Criminal, Trial
    of indictments together, Severance, Argument by prosecutor,
    Defendant's decision not to testify, Instructions to jury,
    Presumptions and burden of proof, New trial, Interpreter.




Indictments found and returned in the Superior Court
Department on April 30, 2008.

The cases were tried before Maureen B. Hogan, J., and a
motion for a new trial was heard by her.


James Vander Salm for the defendant.
David F. O'Sullivan, Assistant District Attorney, for the
Commonwealth.


KAFKER, J.  The defendant, Joseph Elliott, was indicted on

seven charges of rape and indecent assault and battery that

occurred within a one week time span against identical twin

sisters, Karen and Mary.[1,2]  After a jury trial, the defendant was convicted of two counts of rape and two counts of indecent assault and battery against Karen and acquitted of the remaining counts.

The defendant appeals from the judgments and from the trial judge's order denying his motion for new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001).  In his direct appeal, the defendant contends that the trial judge abused her discretion in denying his motion for severance, and that the prosecutor's closing argument violated his constitutional rights to due process and to remain silent.  The defendant also claims that the judge abused her discretion in denying his motion for a new trial.  The issue presented in that motion was his claimed hearing impairment and whether the judge provided adequate accommodations to address the defendant's hearing difficulties.  We affirm.

1.  Background.  The relevant evidence in this case comes primarily from the testimony of Karen and Mary.  The sisters testified that the defendant, a longtime family friend,

---

[1] The sisters' names are pseudonyms.

[2] The defendant was indicted for three counts of rape, in violation of G. L. c. 265, § 22(b), and two counts of indecent assault and battery, in violation of G. L. c. 265, § 13H, against Karen.  Regarding Mary, the defendant was indicted for one count of rape, in violation of G. L. c. 265, § 22(b), and one count of indecent assault and battery, in violation of G. L. c. 265, § 13H.

committed a series of sexual assaults against them in a span of eight days in 2007, when the sisters were nineteen years old. We briefly summarize their testimony, and reserve certain facts for our discussion of the issues raised.

The defendant first met Karen and Mary at church when the sisters were children. Over the years, the defendant became a longtime friend of the family, and grew particularly close to the sisters' mother. The defendant often visited the family's home.

On July 31, 2007, the defendant called Karen and invited her to come to Salem and clean his mobile home in exchange for payment. Karen accepted the invitation because she was unemployed and needed money. While Karen was cleaning the mobile home, the defendant told her how beautiful she was and how much he loved and cared for her. Though Karen resisted his advances, the defendant pushed her onto the bed, held her arms behind her neck, removed her pants, and penetrated her vagina with his penis. After the incident, the defendant told Karen to clean up in the shower, and he then drove her home. Karen did not tell her mother what happened that day because she "didn't want to hurt her," as Karen was concerned her mother would blame herself. Karen later told Mary, "Joe raped me."[3] Karen told her

---

[3] Mary was the first complaint witness for the July 31, 2007, rape and sexual assault of Karen.

sister not to tell her mother for the reasons discussed above, and Mary agreed.

On August 4, 2007, Mary was at home in her room, lying on her bed, listening to her iPod. The defendant arrived at the house with his mother. While the defendant's mother and the sisters' mother had a conversation, the defendant went to Mary's room. After asking Mary how she was doing, the defendant proceeded to hug Mary and kiss her on the lips. Though Mary backed away and told the defendant to stop, the defendant put his hands on her breasts and then down her pants. He then put his fingers inside her vagina. After the defendant stopped and left the house, Mary told Karen what had happened. Karen told Mary she was not ready to tell their mother about her own rape. Therefore, Mary did not tell their mother about her rape, either.

On August 7, 2007, the defendant again called Karen and asked whether she would like to do some additional paid work for him, this time at a house in Beverly. Still in need of money, Karen agreed to go. After completing the work, Karen and the defendant talked about Karen's family and payment for her work. The defendant asked her to come upstairs and take a shower with him. She said no and when he went upstairs, she called Mary and told her about the shower request and how uncomfortable she felt. Mary told Karen to have the defendant drive her home.

The defendant returned downstairs and sat down next to Karen on the couch. While on the couch, the defendant put his arms around Karen, told her to relax, and told her that he loved her. At that point, he held Karen down as she tried to fight him off and then put his hand down her jeans and in her vagina. He also put his hand on her breasts. He next pulled down her jeans, and while restraining her arms, inserted his tongue into her vagina. During this altercation, Karen's cellular telephone (cell phone) rang, and Karen answered. Mary was calling and indicated that she had told their mother about the defendant's sexual assaults against both of them. After the defendant spoke with their mother on his own cell phone, he told Karen:

> "You can't do this to me. I loved you. I loved you your whole life. I thought you loved me. I tried being there for you and your sister. I don't want to go to jail. You can't do this to me. You have to lie. Tell them that I didn't do anything."

2. <u>Discussion</u>. A. <u>Joinder</u>. Rule 9(a)(3) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), provides that "[i]f a defendant is charged with two or more related offenses, either party may move for joinder of such charges. The trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." The defendant alleges that the offenses regarding Karen and Mary were improperly joined for trial. "[T]he decision whether to join offenses for trial is a matter left to

the sound discretion of the judge," which will not be reversed absent "'a clear abuse of discretion.'" Commonwealth v. Pillai, 445 Mass 175, 179-180 (2005), quoting from Commonwealth v. Walker, 442 Mass. 184, 199 (2004).  We conclude that the denial of the defendant's motion for severance was proper.

To prevail on a claim of misjoinder, the defendant must demonstrate, first, "that the offenses were unrelated," and second, "that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial."  Commonwealth v. Pillai, 445 Mass. at 180, quoting from Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005).  Commonwealth v. Aguiar, 78 Mass. App. Ct. 193, 199 (2010).  The defendant fails to meet either burden.

When determining whether offenses are related for the purpose of rule 9, a judge may consider a number of factors, including "factual similarities between the offenses, . . . whether the offenses were near to each other in time or place, [and] whether the offenses sprang from the same cause or motivation."  Commonwealth v. Gray, 465 Mass. 330, 335 (2013).  See Commonwealth v. Pillai, 445 Mass. at 180.  In light of the facts that the sisters were identical twins, each of the seven alleged offenses took place roughly within the span of one week, and the Commonwealth's theory was that the defendant had exploited his relationship of trust with the mother in order to

gain access to the sisters, the judge properly concluded that the offenses were related. See Commonwealth v. Pillai, supra at 181-182; Commonwealth v. Aguiar, 78 Mass. App. Ct. at 201-202.

The defendant also failed to demonstrate that he was unduly prejudiced by the joinder. The issue of prejudice largely turns on whether evidence of the other offenses would be admissible in separate trials on each offense. See Commonwealth v. Wilson, 427 Mass. 336, 346 (1998); Commonwealth v. Zemtsov, 443 Mass. 36, 45 (2004). Though "[i]t is settled that evidence of other criminal conduct is inadmissible to prove the propensity of the defendant to commit the indicted offense," Commonwealth v. Mamay, 407 Mass. 412, 417 (1990), such evidence is permissible to "show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." Ibid., quoting from Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). In the instant case, the common scheme to exploit the mother's trust and the common sexual attraction to the twins was well established. Additionally, the testimony of either victim would be admissible in the other's trial as a first complaint witness, and was relevant to the timing of the disclosure of each sister's rape, given that (1) Mary waited to disclose out of consideration for Karen, and (2) Mary's eventual disclosure triggered Karen's own disclosure. See Commonwealth v. Aguiar, 78 Mass. App. Ct. at 203 (one victim's disclosure resulted from

having overheard conversations concerning other victim's disclosure).  See also Commonwealth v. Pillai, 445 Mass. at 178, 183 & n.11 (joinder proper where first victim's disclosure prompted second victim to disclose).  Moreover, the defendant's acquittal on three of the charges suggests that he was not unduly prejudiced by the joinder.  See Commonwealth v. Green, 52 Mass. App. Ct. 98, 103 (2001); Commonwealth v. Aguiar, supra at 204.

B.  Prosecutor's closing argument.  The defendant next asserts that the prosecutor used his closing argument to comment on the defendant's decision not to testify and shifted the burden of proof to the defendant, thereby infringing on the defendant's constitutional rights to due process and not to testify.  The issue was properly preserved.  After reviewing the prosecutor's remarks "in light of the 'entire argument, as well as in light of the judge's instruction[s] to the jury and the evidence at trial,'" Commonwealth v. Johnson, 463 Mass. 95, 111 (2012), quoting from Commonwealth v. Rodriguez, 437 Mass. 554, 565 (2002), we discern no error.

Under both the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, the prosecution is forbidden to comment on a defendant's decision not to testify at trial or to imply that the defendant's silence is evidence of guilt.  See Griffin

v. <u>California</u>, 380 U.S. 609, 611-615 (1965); <u>Commonwealth</u> v. <u>Hawley</u>, 380 Mass. 70, 88 (1980).  Similarly, a defendant has the right not just to remain silent, but "to remain passive, and to insist that the Commonwealth prove its case beyond a reasonable doubt without explanation or denial by him."  <u>Commonwealth</u> v. <u>Grant</u>, 418 Mass. 76, 83 (1994), quoting from <u>Commonwealth</u> v. <u>Madeiros</u>, 255 Mass. 304, 307 (1926).  In the case at bar, the prosecutor began his closing argument by stating:

> "I thought when he said he wanted to talk, he was going to apologize for what he did before.  Was [Karen] naive [and] foolish?  You betcha.  But was she lying to cover up a consensual sor[did] affair with this guy?  Forget about it.  <u>Where's the evidence that this was a consensual affair?</u> <u>Where was it presented in this courtroom?  There's nothing,</u> <u>nada, zip, zilch, zero evidence that this was consensual.</u> Now, the defendant doesn't have to prove anything.  The defendant doesn't have to put on a case.  It's the Commonwealth's burden to prove beyond a reasonable doubt that the defendant is guilty.  And I cherish that burden, and I would suggest to you I lived up to that burden in this case."  (Emphasis added.)

While it is impermissible for a prosecutor to comment on a defendant's failure to testify or to make statements that shift the burden of proof from the Commonwealth to the defendant, "[a] prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case, even though he may, in so doing, prompt some collateral or passing reflection on the fact that the defendant declined to testify."  <u>Commonwealth</u> v. <u>Nelson</u>, 468 Mass. 1, 12 (2014), quoting from <u>Commonwealth</u> v. <u>Feroli</u>, 407 Mass. 405, 409 (1990).

After reviewing the remark in context, we are satisfied that the prosecutor's closing argument was permissible. The prosecutor immediately followed up the challenged remark by confirming that the defendant had no duty to produce evidence at trial. This undercuts any possibility that the jury would interpret his remark as an improper comment on the defendant's failure to take the stand or produce further evidence. See Commonwealth v. Pena, 455 Mass. 1, 19 (2009).

In addition, the judge gave "clear, strong, and correct instructions," Commonwealth v. Nelson, 468 Mass. at 13 (other citation omitted), regarding both the Commonwealth's burden and the defendant's right not to testify or present evidence. The judge's thorough instructions adequately cured any potential prejudice posed by the prosecutor's remarks. See Commonwealth v. Pena, 455 Mass. at 20; Commonwealth v. Tu Trinh, 458 Mass. 776, 788 (2011); Commonwealth v. Nelson, 468 Mass. at 13. Compare United States v. Skandier, 758 F.2d 43, 45 (1st Cir. 1985) (judge's instructions cured only one of "double barreled" dangers posed by prosecutor's remark).

C. Motion for new trial. The defendant argues that he is entitled to a new trial because the trial judge failed to ensure that his hearing difficulties were adequately accommodated, thereby violating his State and Federal constitutional rights and his rights under G. L. c. 221, § 92A. For the reasons

stated below, we conclude that the denial of the defendant's motion for a new trial was proper.

Pursuant to Mass.R.Crim.P. 30(b), a trial judge "may grant a new trial at any time if it appears that justice may not have been done."  In the instant case, at the request of both parties, the motion was decided by the trial judge based on the trial record and the affidavits provided, without an evidentiary hearing.  We defer to the judge's factual findings, Commonwealth v. Scott, 467 Mass. 336, 344 (2014), and evaluate the judge's denial of the defendant's motion for a new trial "only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Acevedo, 446 Mass. 435, 441 (2006), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986) (deferential review where motion judge, who was also trial judge, held nonevidentiary hearing on motion for new trial).

i.  Rights of deaf and hearing-impaired persons.  In accordance with Massachusetts statutory requirements and the principles of due process, deaf and hearing-impaired persons are entitled to court-provided accommodations to address their hearing loss.  As acknowledged by the trial judge and the Commonwealth in its brief, a defendant's hearing abilities also implicate his constitutional rights to be present at trial, to consult with his lawyer, to confront witnesses against him, and

to testify.  Cf. <u>United States</u> v. <u>Carrion</u>, 488 F.2d 12, 14 (1st Cir. 1973), cert. denied, 416 U.S. 907 (1974).  In addition to constitutional considerations, statutory protections for deaf and hearing-impaired defendants, at least in regard to sign-language interpreters, are set forth in G. L. c. 221, § 92A.  Section 92A, as amended by St. 1983, c. 585, § 9, provides that "[i]n any proceeding in any court in which a deaf or hearing-impaired person is a party or a witness, . . . such court . . . shall appoint a qualified interpreter to interpret the proceedings."  Though the phrase "hearing-impaired" is not defined by either statute or case law, G. L. c. 6, § 191, inserted by St. 1985, c. 716, § 2, defines the comparable term "hard of hearing" as "a condition of or person with some absence of auditory sensitivity with residual hearing which may be sufficient to process linguistic information through audition with or without amplification under favorable listening conditions, or a condition of or person with other auditory handicapping conditions."  See <u>Commonwealth</u> v. <u>Smith</u>, 431 Mass. 417, 420 (2000) (when interpreting undefined statutory terms, it is permissible to reference language from other statutes).

During jury empanelment, defense counsel requested equipment to assist with the defendant's hearing difficulties:

> <u>Defense counsel</u>:  "Can I just bring up one other matter I forgot?  He has some hearing difficulties.  He's not deaf or anything like that.  But when he testifies, I worry

> about him hearing questions.  Could I request -- I know
> there are usually standard hearing apparatus.  I never made
> the request in advance.
> Prosecutor:  "(inaudible)."
> Defense counsel:  "I'll check.  I don't need it now.  But
> just once it gets going."
> The court:  "Okay."

This brief exchange was the full extent of any discussion during trial relating to the defendant's hearing problems.  As the judge explained in her memorandum of decision and order on defendant's motion for new trial, "The court did not deny his request [for a hearing apparatus] but allowed it.  Defense counsel was referred to the clerk and court officers to obtain such equipment."  The trial judge's allowance of that request was proper.  Had she denied the request, such denial, at least without further proceedings to confirm the defendant's hearing abilities, would have been improper.

In his motion for a new trial, the defendant alleged that after his trial counsel was referred to the court officers to obtain hearing assistance equipment, he was told that the equipment was not available.  The judge expressly rejected this contention, which was contradicted by the court officers, whose affidavits she credited.  See Commonwealth v. Buckman, 461 Mass. 24, 43 (2011) ("A judge is not required to credit assertions in affidavits submitted in support of a motion for a new trial, but may evaluate such affidavits in light of factors pertinent to credibility, including bias, self-interest, and delay");

Commonwealth v. Wen Chao Ye, 52 Mass. App. Ct. 850, 860 (2001) ("The credibility, weight, and impact of the affidavits in support of the motion were matters left to the discretion of the trial judge" deciding the new trial motion). The court officers' affidavits stated that the defendant never requested such equipment and if such equipment had been requested, it would have been provided because the equipment was available. The judge further explained that the defendant was represented by experienced counsel, who would have objected to the failure to provide the necessary equipment had it been denied by the court officers after the judge allowed counsel's request.

The defendant further asserts that he was not able to hear the sisters' testimony at trial, and was thus unable to effectively assist his counsel in confronting those witnesses, in violation of his rights under Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Again, the judge's findings of fact reject this contention. The judge found that though the defendant does suffer from some hearing loss,[4] this

---

[4] In connection with his motion for new trial, the defendant submitted the results of several hearing tests for the trial judge's consideration. Based on tests conducted prior to the date of trial, the judge found that the defendant suffered from "mild 30 db hearing loss in his right ear." The judge discredited later tests conducted after the defendant filed his motion for new trial due to the subjective nature of such tests,

did not prevent him from hearing testimony and effectively communicating at trial. The judge emphasized that the courtroom was equipped with microphones that amplified the testimony and both attorneys had loud voices and spoke loudly. She also observed the defendant over the course of five days of trial, during which he did not show any indication that he had any difficulty hearing witness testimony, the questions of the lawyers, or the judge. The judge observed that the defendant consulted with his lawyer and managed to communicate effectively with the judge both during a colloquy regarding his decision not to testify and during sentencing. These findings of fact are supported by the trial record, and the judge's credibility findings are final. See Commonwealth v. Buckman, 461 Mass. at 43; Commonwealth v. Scott, 467 Mass. at 344. Finally, the defendant claimed that his decision not to testify was influenced by his fear that he would be unable to hear the questions put to him on cross-examination. The judge likewise rejected this contention, finding it not credible. She relied in part on an affidavit of the assistant district attorney who asked defense counsel whether the defendant would be testifying and was told by defense counsel, "No, not after he saw what you did to his sister" during cross-examination.

---

and the defendant's motivation to exaggerate his claim of hearing loss after trial.

ii. Further judicial intervention. The defendant suggests that the judge nonetheless violated his constitutional and statutory rights by not doing more on her own during trial, without any request from counsel. We disagree. The judge's findings of fact are dispositive. The defendant never requested the communication access real-time translation (CART) equipment from the court officers, and had he done so, the CART equipment would have been provided. To obtain further action by the judge, defense counsel must bring the defendant's hearing difficulties to the judge's attention or the circumstances at trial must make it clear that additional judicial intervention is necessary. See Crivello v. All-Pak Mach. Sys., 446 Mass. 729, 733-734 (2006) (defendants did not request interpreter and circumstances at trial did not indicate that defendants required interpreter); United States v. Carrion, 488 F.2d at 15 (judicial intervention required when court put on notice that defendant may be experiencing "significant language difficulty"); United States v. Barrios, 457 F.2d 680, 682 (9th Cir. 1972) (lack of judicial intervention not abuse of discretion if need for interpreter not apparent and services not requested). Under either scenario, the judge must be put on notice. Such was not the case at the defendant's trial.

The defendant has not shown that the judge had any reason to suspect that he was unable to hear witnesses or participate

in his defense. Nothing during trial alerted the judge to any hearing problems the defendant might be experiencing. Defense counsel, who was in the best position to know about his client's hearing difficulties at trial, raised no objections. Thus, we are not persuaded by the defendant's argument that the judged erred by not doing more.

The defendant makes much of the language in G. L. c. 221, § 92A, which provides in pertinent part that the rights provided by the statute for interpreters for deaf and hearing-impaired persons may not be waived unless the waiver is knowingly, voluntarily, and intelligently made in writing, by the deaf or hearing-impaired person themselves.[5] At the outset we note that the express rights provided by § 92A refer to qualified interpreters,[6] not the CART services which the defendant on appeal claims he was entitled to, and the defendant here does

---

[5] The statute states that the judge "shall appoint a qualified interpreter to interpret the proceedings, unless such deaf or hearing-impaired person knowingly, voluntarily, and intelligently waives, in writing the appointment of such interpreter. Such waiver is subject to the written approval of counsel where such deaf or hearing-impaired person is being represented by counsel. In no event shall the failure of the deaf or hearing-impaired person to request an interpreter be deemed a waiver of such appointment."

[6] The statute defines "[q]ualified interpreter" as "a person [who is] skilled in sign language or oral interpretation and transliteration, has the ability to communicate accurately with a deaf or hearing-impaired person and is able to translate information to and from such hearing-impaired person." G. L. c. 221, § 92A.

not know sign language and did not seek sign language assistance. Regardless of whether § 92A is limited to sign language interpreters,[7] the judge did not treat the claim as waived. Rather, she concluded that (1) she initially granted the defendant's request for CART assistance in the event he needed it, (2) the defendant chose not to request the CART equipment as he was able to hear the testimony and participate in his defense and chose not to testify for other reasons, and

---

[7] Limiting § 92A to sign language interpreters would appear to defeat the "over-all objective" of G. L. c. 221, § 92A, see Sellers's Case, 452 Mass. 804, 810 (2008), namely, to ensure that deaf and hearing-impaired persons can understand and fully participate in the legal proceedings in which they are involved. The original version of the statute, St. 1971, c. 459, granted deaf persons a right to a "qualified interpreter," but did not define that term. The term was first defined in an amendment to the statute in 1983, see St. 1983, c. 585, § 9, before modern technology-based interpretation services were available.

Moreover, the Massachusetts Commission for the Deaf and Hard of Hearing (MCDHH), which works directly with the Administrative Office of the Trial Courts to address communication access needs within Massachusetts courts, already provides CART and other noninterpreter services for deaf and hard-of-hearing persons. Similar to G. L. c. 221, § 92A, the statute that governs the function of the MCDHH, G. L. c. 6, § 194, inserted by St. 1985, c. 716, § 2, states that the MCDHH will provide services to the deaf and hard-of-hearing community, including "interpreter services." This phrase has been broadly construed by the MCDHH to mean "any assistive communication service that enables a deaf or hard of hearing individual to participate in communication at a level comparable to that of a hearing person."

Given the changing landscape of services available to deaf and hard-of-hearing persons, as well as the already available administrative support within our courts for services other than interpreters, we see no reason to limit the scope of services available under § 92A.

(3) his hearing difficulties were exaggerated in connection with the motion for new trial.

3. Conclusion. For the reasons stated above, we affirm the convictions and the order denying the defendant's motion for a new trial.

So ordered.