COMMONWEALTH *vs.* JOHN M. FEROLI.

Plymouth. February 8, 1990. - May 15, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Evidence*, Prior conviction. *Practice, Criminal*, Argument by prosecutor, Instructions to jury.

At a murder trial, the judge did not abuse his discretion in denying the defendant's motion to exclude impeachment evidence of the defendant's prior conviction of armed robbery. [407-408]

At a murder trial, certain remarks of the prosecutor, considered in the context of his closing argument, referred principally to strength of the Commonwealth's case and the weakness of the defendant's case, and did not invite the jury to draw an adverse inference from the defendant's failure to testify, so as to require a curative instruction by the judge. [408-409]

Although it would have been preferable for the judge at a murder trial to instruct the jury that they were to draw no adverse inference from the fact that the defendant did not testify, the judge's omission of these words from an otherwise satisfactory instruction on the right not to testify, to which the defendant made no objection, created no substantial risk of a miscarriage of justice. [409-411]

INDICTMENTS found and returned in the Superior Court Department on December 3, 1984.

The cases were tried before *Augustus F. Wagner, Jr.*, J.

*Kevin J. Reddington* for the defendant.

*Mary O'Sullivan Smith*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, John M. Feroli, appeals from two convictions of murder in the first degree (by reason of deliberate premeditation and felony murder). The defendant's first trial ended in a mistrial when the jury were unable to reach a verdict after seven days of deliberation. Following the mistrial, a single justice of this court affirmed the trial

judge's denial of the defendant's motion for a required find-
ing of not guilty. The defendant's second trial, which was
severed from that of his two codefendants in the first trial,[1]
resulted in the convictions.

On appeal, the defendant claims that the judge erred in
denying his motion to exclude his record of prior convictions
and for a required finding of not guilty, and in improperly
instructing the jury. In addition, the defendant argues that
the prosecutor improperly commented during closing argu-
ment on the defendant's failure to testify, that the trial was
unfair, and that the judge was biased. We affirm the convic-
tions and conclude that there is no reason to exercise our
power under G. L. c. 278, § 33E.

The Commonwealth presented most of its case through the
testimony of an immunized witness, Carol Sylvester (Carol),
in whose home Thomas Sylvester and William O'Connor
(victims) were killed.

Carol testified as follows. On October 6, 1986, Herbert
Andrews, Jr., and Thomas Cormier persuaded Carol to lure
the victims to her house by telling them that she had a buyer
for some marihuana that they wished to sell. Andrews and
Cormier had decided to kill the victims over a dispute involv-
ing damage that Andrews had done to O'Connor's car. On
October 7, Andrews and Cormier arrived at Carol's house
with two guns and some rope. When the victims did not ap-
pear, however, it was agreed that the killings would be post-
poned until the following day. Andrews and Cormier decided
that they needed a third "guy" to accomplish the planned
killings. Andrews enlisted the defendant and told him the de-
tails of the plan to kill the victims.

On October 8, 1986, Andrews, Cormier, and the defendant
arrived at Carol's house with a handgun, a rifle, a knife, and
a baseball bat. Before the victims arrived, Andrews, Cormier,
the defendant, and Carol gathered in the kitchen and final-

---

[1]Herbert Andrews, Jr., and Thomas Cormier, codefendants at the first
trial, were both convicted of murder in the first degree at the second trial.
See *Commonwealth* v. *Andrews*, 403 Mass. 441 (1988).

ized the plan. Carol let the victims into the house while Andrews, Cormier, and the defendant remained in a back room. Shortly thereafter, the three ran out, Andrews and Cormier armed with the guns and the defendant with the knife and baseball bat. The defendant stood by the door just before Andrews and Cormier shot and killed the victims.

Carol testified that, while in the kitchen prior to the killings, Cormier told the defendant to "take the stuff out of [the victims'] pockets, get the pot and then stand by the door and make sure that no one tried to run outside." After Andrews, Cormier, and the defendant came out of the back room, Carol went into the bedroom. She heard Cormier tell the defendant to "scoop the stuff up." She walked out of the bedroom at that point to retrieve her cigarettes from the kitchen counter and saw the defendant "holding the plastic bag with one pound [of marihuana] in it." She returned to the bedroom and then heard shots.

After a few minutes, Carol called the police. The first police officer to arrive saw the victims lying on the floor. Various personal papers and a wallet were strewn about the room in the vicinity of the bodies.

Two days later, Carol told the police what had occurred. The police obtained arrest warrants for the three and apprehended them at the home of Cormier's girl friend. When the police arrived, the defendant fled from the building, jumping out of a second story window. On being apprehended, the defendant gave a false name. That same day a baseball bat and knife were found in Andrews's automobile.

1. *The defendant's motion to exclude evidence of prior convictions.* The defendant contends that the judge committed an abuse of discretion by denying his pretrial motion to exclude his record of prior convictions as a means of impeachment. The defendant took the position that, unless his prior convictions were excluded, he could not testify.

We assume, without deciding, that, contrary to the decision of the Supreme Court in *Luce* v. *United States*, 469 U.S. 38, 43 (1984), a defendant need not testify to preserve for review a claim that a motion to exclude impeachment evi-

dence of a prior conviction was improperly denied. See, e.g., *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 854 (1988).

Where the issue has been seasonably raised and properly presented, we review to determine whether the judge abused his discretion in admitting evidence of a prior conviction, because "the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). The court has recognized that a danger of unfair prejudice exists if a prior conviction is substantially similar to the crime being tried. *Commonwealth* v. *Fano*, 400 Mass. 296, 303 (1987). We review the exercise of discretion only on the basis of what was before the judge at the time the decision was made. *Commonwealth* v. *Gonzalez*, 22 Mass. App. Ct. 274, 280 (1986).

Although the trial transcript does not contain the record of prior convictions submitted to the judge with the defendant's motion, we accept for the purpose of argument the defendant's assertion that it was a prior conviction for armed robbery that he specifically sought to exclude.

Armed robbery is not an offense substantially similar to the offenses charged. When presented with the identical issue in the appeal of a codefendant at the first trial, this court stated that "[t]here is a substantial difference between armed robbery and murder, even if that murder is committed in the course of armed robbery." *Commonwealth* v. *Andrews*, 403 Mass. 441, 457 (1988). There was no abuse of discretion.

2. *The prosecutor's closing argument.* The defendant claims that the judge erred in refusing to give a curative instruction after the prosecutor made the following statement during his closing argument:

> "I suggest to you that in his opening [defense counsel] said he was going to prove to you that this defendant wasn't involved. Well, I suggest to you that you haven't heard any testimony, any evidence other than the fact that he was involved."

The defendant contends that this statement invited the jury to make an adverse inference from the defendant's refusal to testify. We disagree.

A prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case, even though he may, in so doing, prompt some collateral or passing reflection on the fact that the defendant declined to testify. The question is whether the challenged remark, when viewed "in the context of the entire argument," is "directed more at the general weakness of [the defendant's] defense than toward the defendant's own failure to testify." *Commonwealth* v. *Storey*, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). "[U]nless a prosecutor's comments are of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify, they are not prejudicially unfair." *Commonwealth* v. *Smallwood*, 379 Mass. 878, 892 (1980), quoting *United States* v. *Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), cert. denied, 430 U.S. 917 (1977).

As the challenged remark suggests, in his opening defense counsel had vigorously asserted that the defendant, though present at the scene of the crime, did not participate in the killings. During that portion of the prosecutor's closing argument leading up to the challenged remark, the prosecutor had reviewed the Commonwealth's evidence to the contrary. Seen in context, the challenged remark referred principally to the strength of the Commonwealth's case and the weakness of the defendant's case. The judge's refusal to give a curative instruction did not constitute error.

3. *"No adverse inference."* Before the judge instructed the jury, defense counsel requested an instruction that the jurors should draw no adverse inference from the fact that the defendant had elected not to testify. Although the judge agreed to give such an instruction, he failed to use the specific "no adverse inference" language. The judge did, however, instruct the jury that:

"[T]he defendant has the absolute right to remain passive and require the Commonwealth to prove its case beyond a reasonable doubt, and in so doing he may elect to participate by way of examination of the evidence presented by the Commonwealth or not elect to participate to that extent. . . . The evidence that is forthcoming is by way of direct examination, or cross-examination. You ultimately take all of that evidence, that you have before you, and you weigh it and consider it and decide what you find to be credible. Upon that evidence that you find to be credible and believable, you decide the issues in this case."

At the conclusion of the jury instruction, defense counsel objected to numerous portions of the charge but did not object to the absence of specific "no adverse inference" language.

In *Carter* v. *Kentucky*, 450 U.S. 288, 305 (1981), the Supreme Court held "that a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify."

In measuring the judge's instruction against this constitutional obligation, it is significant that the judge emphasized that the defendant's right not to testify was "absolute," and that the prosecution retained its heavy burden of proof regardless of whether the defendant testified. The judge clearly stated that the jury were required to decide the case on the basis of the testimony presented. In addition, he characterized the defendant's decision not to testify in positive terms, carefully avoiding any statement that the defendant had "refused," "failed," or "neglected" to testify. Cf. *Commonwealth* v. *Thomas*, 400 Mass. 676, 683 (1987).

While this court has recognized a defendant's right to an instruction minimizing the danger that the jury will draw an adverse inference from his failure to testify, see, e.g., *Commonwealth* v. *Buiel*, 391 Mass. 744, 745 (1984), we have also ruled that "[t]hat right does not entitle a defendant to specify the precise language of the judge's instruction . . . ."

*Commonwealth* v. *Thomas, supra* at 679. See *United States* v. *Ladd,* 877 F.2d 1083, 1089 (1st Cir. 1989) ("We do not . . . read *Carter* as requiring any exact wording").

Because defense counsel did not object to the judge's failure to use the exact words "no adverse inference," we review that failure pursuant to G. L. c. 278, § 33E, solely to determine whether it created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Callahan,* 401 Mass. 627, 631 (1988). While it would have been preferable for the judge to have used the exact words "no adverse inference," we find that his failure to do so did not create a substantial likelihood of a miscarriage of justice.

4. *The charge.* The defendant also challenges the judge's charge on issues involving voluntary intoxication, reasonable doubt, the presumption of innocence, inadequacies in the police investigation, joint venture, felony murder, the testimony of immunized witnesses, and consciousness of guilt. The charge was free of error and these claims are so lacking in merit that no further discussion is required. There is also no basis for the claims that the judge was improperly biased, that he erred in denying the defendant's motion for a required finding of not guilty, or that the trial was unfair.

5. *Examination under G. L. c. 278, § 33E.* After reviewing the record in its entirety, we conclude that there is no substantial likelihood that a miscarriage of justice has occurred and, therefore, we decline to grant relief under § 33E.

Accordingly, we affirm the convictions of murder in the first degree.

*Judgments affirmed.*