COMMONWEALTH vs. LONNIE L. GILCHRIST, JR.

Suffolk. May 4, 1992. - July 22, 1992.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Malice. Mental Impairment. Practice, Criminal,* Instructions to
jury, Interrogation of jurors, Deliberation of jury. *Jury and Jurors.*

In a murder case, the judge adequately instructed the jury concerning the
defendant's right not to testify. [217-219]

In a criminal case, the judge properly ruled that affidavits in support of a
motion for new trial, based on hearsay and multilevel hearsay informa-
tion received largely from anonymous telephone callers, formed an in-
sufficient basis to compel a judicial inquiry of the jurors as to extrane-
ous influences on the verdict. [219-221]

In a murder case, the judge correctly instructed the jury on the issue of
malice [221]; and there was no substantial likelihood of a miscarriage
of justice with respect to his instructions on the issue of the defendant's
mental impairment [222-223].

INDICTMENTS found and returned in the Superior Court
Department on May 2, 1988.

The cases were tried before *John J. Irwin, Jr.,* J.

*Gary K. Dubcoff* for the defendant.

*Nijole Makaitis,* Assistant District Attorney (*Ronald F.
Moynahan,* Assistant District Attorney, with her), for the
Commonwealth.

LYNCH, J. The defendant was convicted by a jury of mur-
der in the first degree and of unlawfully carrying a firearm.
He filed a motion for a new trial, which was denied. His mo-
tions for reconsideration and for a hearing to examine the
jurors were also denied. The defendant appeals from his con-
victions, and the denials of his motions. In addition, he seeks
relief from his murder conviction, pursuant to G. L. c. 278,
§ 33E (1990 ed.). We affirm.

The jury could have found the following facts. Between 10:30 and 11:30 A.M. on April 7, 1988, the defendant, who had been employed as a stockbroker at the Boston offices of Merrill Lynch, entered the office of George Cook, a vice president of Merrill Lynch, and shot him with a pistol five times, at least once when Cook was on the floor. The defendant then chased Cook, who had managed to get to his feet and run from his office, down the hall, in full view of the employees at Merrill Lynch, striking the back of Cook's head three times with the butt of the gun and kicking him. Cook died after being taken to Massachusetts General Hospital. The defendant did not contest that he was the person who had shot Cook, but rather based his defense on insanity.

The defendant claims error arising from: (1) the trial judge's refusal to give the requested instruction regarding the defendant's decision not to testify; (2) the judge's denial of the defendant's motion for a new trial and his failure to conduct posttrial examinations of the jurors; (3) the judge's failure properly to instruct on (a) the subjective component of malice, (b) the proper analytical framework to be applied in consideration of evidence of mental impairment, and (c) the burden of proof and persuasion on the issue whether the defendant suffered from a mental disease, defect, or impairment. He also asks that we exercise our power under G. L. c. 278, § 33E, and reduce the verdict to murder in the second degree. We address these arguments seriatim.

1. *Adverse inference.* The defendant argues that the judge refused to instruct the jury that they may not draw any negative inference from the defendant's decision not to testify. After the judge's instructions to the jury, the defendant specifically objected to the fact that the judge did not give his "instruction no. 4."[1] After reading the instruction into the

---

[1]"Instruction no. 4" reads as follows: "The prosecution alone has the entire burden of proof. The accused has no obligation to prove or disprove anything. On the contrary, the accused has an absolute right to remain silent and to require that the prosecution prove all the elements of its case. Accordingly, you should not and must not draw any negative inference against the Defendant from the fact that he declines to testify."

record, the defendant's attorney stated: "I believe you made some mention, but not in that specific way, your Honor."

"The Supreme Court has said that a judge must give an appropriate instruction concerning a defendant's right not to testify if the defendant requests it. *Carter* v. *Kentucky*, 450 U.S. 288 (1981)." *Commonwealth* v. *Buiel*, 391 Mass. 744, 745 (1984). However, we have ruled that "[t]hat right does not entitle a defendant to specify the precise language of the judge's instruction . . . ." *Commonwealth* v. *Thomas*, 400 Mass. 676, 679 (1987). See *Commonwealth* v. *Feroli*, 407 Mass. 405, 411 (1990); *United States* v. *Ladd*, 877 F.2d 1083, 1089 (1st Cir. 1989). We have also stated that "[t]he legal adequacy of a particular instruction to the jury can only be judged in the context of the whole charge, and not on the basis of limited or isolated portions of it." *Commonwealth* v. *Carrion*, 407 Mass. 263, 270 (1990).

The judge in this case began his charge to the jury with the presumption of innocence. He stated:

> "The presumption of innocence means that the fact that a person may have been charged with a crime, the fact that a person may have been arrested, the fact that the person may have been held on bail or without bail, the fact that a person sits in a courtroom labelled as the Defendant . . . *none of those considerations, obviously, are any evidence whatsoever of that person's guilt, and you can't construe it that way at all.*

> "And the presumption of innocence means more. It means that the Defendant doesn't have to prove that he's innocent. The Defendant doesn't have to prove that he didn't do it. *The Defendant does not have to testify.* . . . An accused is never obligated to prove his innocence. The accuser is obligated to prove his guilt beyond a reasonable doubt. And that burden of proof does not shift from the government to the Defendant." (Emphasis added.)

"While it would have been preferable for the judge to have used the exact words 'no adverse inference,' " *Commonwealth* v. *Feroli, supra,* nevertheless we determine that the judge gave an adequate instruction concerning the defendant's right not to testify. Taken as a whole the charge satisfied the requirement for an instruction minimizing the danger that the jury will draw an adverse inference from the defendant's decision not to testify. *Commonwealth* v. *Thomas, supra.*

2. *Posttrial motions.* The defendant argues that the judge's denial of his motions for a new trial and to conduct examinations of the jurors constituted an abuse of discretion. A party "seeking judicial investigation must make a colorable showing that an extrinsic influence may have had an impact" on a jury's impartiality. *Commonwealth* v. *Dixon,* 395 Mass. 149, 151-152 (1985). "The question whether the party seeking an inquiry has made such a showing is properly addressed to the discretion of the trial judge." *Id.* at 152.

The affidavits in support of the motion for a new trial were signed by the defendant's attorneys. The judge noted that no juror had contacted the court with any information regarding any extraneous matter which may have entered into the jury's deliberations. The judge found that the basis for one of the affidavits was an anonymous telephone call, and that both were based almost exclusively on hearsay. The affidavits submitted alleged that: (a) an anonymous caller said that, one night during their sequestration, one of the jurors had been brought by court officers to the lobby of the hotel where they were sequestered to see the juror's spouse and children, (b) the anonymous caller stated she was a juror but had not heard about this information until two days after the verdicts; (c) the caller alleged that the same juror had received notes from family members, "including something to the effect of hang in there"; (d) another anonymous caller stated "keep a close look at what the court officers are doing with the jurors"; (e) just before the jury were brought to the courtroom and the verdicts were read, a detective indicated to the victim's family a "thumbs up for victory"; and (f) an

unidentified court officer told the defendant that one juror was "holding out" for acquittal, but that the other jurors pressured that juror to vote for conviction. The judge ruled that affidavits based on information from anonymous telephone callers containing almost exclusively hearsay, some of it multilevel, formed an insufficient basis to compel a judicial inquiry of the jurors. Furthermore, the judge determined that, even if the statements in the affidavits are accepted as true, no evidence was presented of any extraneous matter which may have had an impact on the jury's impartiality.

The defendant moved for reconsideration alleging additional information had been brought to defense counsel's attention and submitted two affidavits in support of his motion, both signed by one of the defendant's attorneys. The judge found that the affidavits did not present any new information which would warrant exercise of the judge's discretion to conduct a judicial inquiry of the jurors.[2]

The alleged contact with a juror's family took place in the presence of a court officer, and there was no claim that the case was discussed. The "hang in there" note was inoffensive. There was no allegation that it was conveyed to other jurors during deliberations. The allegations concerning the court officers and the detective might raise an inference that someone had advance knowledge of the verdicts but they do not support the claim that an extraneous "disturbing influence" affected the jury's deliberations. See *Commonwealth v. Fidler*, 377 Mass. 192, 199 (1979).

The judge did not abuse his discretion. While " '[p]roper respect for the right to jury trial . . . dictates judicial vigilance to ensure, in so far as reasonably possible, that jury deliberations are conducted privately and without extraneous influences,' . . . [m]inor invasions of the jury's privacy, while regrettable, do not impinge upon the right." (Citations omit-

---

[2]The judge found that the only new allegation was that a juror had received two bouquets of flowers, one of which contained a neutral note, which was later read to the jury, to the effect of "we stand by your decision."

ted.) *Commonwealth* v. *Sheehy*, 412 Mass. 235, 238-239 (1992).

3. *Instructions to the Jury.*

a. *Malice.* The judge instructed:

> "And malice aforethought . . . includes any unexcused — any unexcused specific intent to kill, or any unexcused specific intent to do grievous bodily harm, or any unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily injury will follow.

> "If a Defendant, or if an accused commits an act, in circumstances known to the Defendant at that time, deliberately, where a reasonably prudent person in the same situation would realize that the doing of that act would indeed cause serious bodily injury or death, then the jury may consider that as proof of malice aforethought."

To find a defendant possessed malice absent specific intent to kill or to do grievous bodily injury, the members of a jury have to find that "in the circumstances known to the defendant a reasonably prudent person would have known of the plain and strong likelihood that death would follow a contemplated act . . . . [The] objective reasonable person test is applied to the circumstances the defendant knew (a subjective measure)." *Commonwealth* v. *Grey*, 399 Mass. 469, 472 n.4 (1987).

The defendant focuses on the words "in the same situation," arguing that a juror reasonably could conclude from those words that the test was a wholly objective one and thus removed the subjective component of the malice standard from the jury's consideration. We do not agree. The only logical interpretation of the phrase is that it emphasizes the concept that the objective reasonable person would have to be acting in the same circumstances as those subjectively known to the defendant.

b. *Mental impairment.* The defendant argues for the first time on appeal that the judge instructed the jury, in effect, to treat consideration of the defendant's mental impairment as an "all-or-nothing" proposition. We disagree. The judge instructed the jury that, to find the defendant guilty of murder in the first degree, the Commonwealth must prove three elements beyond a reasonable doubt: (a) an unlawful killing, (b) committed with deliberate premeditation, and (c) committed with malice aforethought. The judge instructed the jury that mental impairment could be considered on the elements of deliberate premeditation and malice aforethought. The judge also instructed the jury that, if the Commonwealth proved beyond a reasonable doubt that the defendant committed the crimes, it must also prove beyond a reasonable doubt that the defendant was legally sane at the time the crimes were committed. At the conclusion of his charge on insanity, the judge said:

> "[I]f you the jury have a reasonable doubt as to whether or not there was impairment of the Defendant's mental processes that falls short of insanity, you may consider whether or not such impairment of the Defendant's mental processes precluded him from being able to deliberately premeditate or to form the specific intent required for malice aforethought."

The defendant's argument depends on his strained interpretation of the word "precluded." That word did not make the jury's consideration of the defendant's mental impairment an "all-or-nothing" proposition. The quoted portion in the context of the full charge instructed the jury to consider whether the defendant acted with deliberate premeditation or with the requisite specific intent. It was analogous to language approved in *Commonwealth* v. *Gould,* 380 Mass. 672, 683 (1980), and restated in *Commonwealth* v. *Henson,* 394 Mass. 584, 592 (1985) ("a jury may consider the question whether a defendant charged with murder in the first degree was so overcome by alcohol or some other drug that he was

incapable of deliberate premeditation"). The use of the word "precluded" in the context of the entire charge did not present a substantial likelihood of a miscarriage of justice.

c. *Burden shifting.* The defendant argues that the judge erroneously shifted the burden of proof to the defendant. The judge stated: "Furthermore, ladies and gentlemen, you may consider the Defendant's mental condition on the day in question, including any mental impairment, if he had that — if you find that he had that — in determining whether or not the Defendant acted with deliberate premeditation." The defendant did not object to this language. We therefore review to determine whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Dias*, 405 Mass. 131, 137 (1989).

Despite the "finding" language, which we have condemned in other contexts, *Commonwealth* v. *Nieves*, 394 Mass. 355, 361 (1985), we conclude that the judge's instructions, as a whole, did not impermissibly shift the burden to the defendant. The judge repeatedly stated that the Commonwealth was required to prove beyond a reasonable doubt (a) each element of the offenses, and (b) that the defendant was sane and had the capacity to form the requisite intent. The judge also clearly stated that the burden never shifted to the defendant. Not every isolated use of the words "find" or "found" creates a burden-shifting presumption. *Commonwealth* v. *Shelley*, 411 Mass. 692, 697 (1992). *Commonwealth* v. *Albert*, 391 Mass. 853, 859 (1984). The jury could not have understood the cryptic remark regarding mental impairment "if he had that — if you find that he had that" as meaning the defendant had the burden of proving mental impairment in the context of the charge as a whole.

4. *G. L. c. 278, § 33E.* After reviewing the record as to the murder conviction, we conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

*Judgments affirmed.*