COMMONWEALTH vs. LEO LAPOINTE, JR. No. 92-P-1784. February 8, 1994. *Homicide. Practice, Criminal*, Required finding, Instructions to jury. *Insanity. Evidence*, Sanity, Presumptions and burden of proof. *Mental Impairment. Intoxication. Malice.*

The defendant was convicted of second degree murder. On appeal, he claims the trial judge erred in the denial of his motion for a required finding of not guilty and in his instructions to the jury on the presumption of sanity and malice. We affirm.

1. *Denial of the motion.* The defendant's argument that his motion for a required finding of not guilty should have been granted is premised on his claim that the Commonwealth failed to prove beyond a reasonable doubt that he was sane at the time of the commission of the crime. The Commonwealth presented evidence that on August 1, 1990, the defendant accompanied a female friend to the Magic Mushroom bar in Fall River where he had at least five or six drinks, before getting into a fight with John Brady and Ralph Brady, the victim. The defendant received a number of cuts in the fight. As a result of the fight, the defendant was ejected from the bar by the bartender. Approximately ten minutes later, after telling his female companion that they were not going to get away with it, he returned to the bar with a combat knife and stabbed and killed Ralph Brady. Immediately after stabbing Ralph Brady, the defendant got into his friend's car, which he had left double parked outside the bar, and drove away. After traveling about a block, the defendant, whose face was bleeding profusely, agreed to let his friend drive. They drove to a pay phone where he gave his friend a number to dial. The defendant then spoke to the person who answered the phone for several minutes. Thereafter, he directed his friend to drive to an apartment where the same person unsuccessfully tried to attend to the defendant's cuts. The defendant's female friend then drove the defendant to a hospital where he was treated for his cuts. A nursing assistant in the emergency room testified that while the defendant appeared to be intoxicated and was yelling that he wanted to go out for a cigarette, he knew where he was, knew he was being treated, and that he was not argumentative with her. A security guard at the hospital testified that he was called to the emergency room to calm the defendant down and that he had a normal conversation with the defendant during which the defendant told him that he had been jumped by three guys in a barroom. After being treated at the emergency room, he told his female friend to drop him off at Globe Four Corners in Fall River.

The defendant presented expert testimony that he suffered from organic brain syndrome and that the combination of this defect and alcohol would have produced a lethal combination for the defendant which would not have allowed him to appreciate the wrongfulness of his conduct or to control his behavior. In rebuttal, the Commonwealth called an expert witness who testified that, while it was possible that Lapointe was suffering from a mental disease or defect at the time of the incident that rendered him

either unable to appreciate what he was doing or to conform his conduct to the law, there was almost no evidence to support the contention that the defendant "was not able to conform his conduct to the requirements of the law" at the time of the incident. He also testified that there were no data to support the defendant's contention that his organic brain syndrome was triggered by the voluntary use of alcohol that evening.

This evidence, when viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), was sufficient for a rational trier of fact to find the defendant sane beyond a reasonable doubt.

2. *Presumption of sanity instruction.* During the judge's charge to the jury, the defendant did not object when the judge told the jury: "In considering the question of sanity of this defendant, you may consider that a majority of people are sane, and that there is a resulting probability that any particular person, including the defendant, was sane." He now argues that this instruction created a substantial risk of miscarriage of justice because it violates art. 12 of the Massachusetts Declaration of Rights and unfairly tilts the scales against the defendant. This argument has recently been addressed by the Supreme Judicial Court and rejected. *Commonwealth* v. *Kappler*, 416 Mass. 574, 585-587 (1993). The instruction remains a correct statement of Massachusetts law. *Ibid.*

3. *Instruction on malice.* While the defendant lodged no objection to the judge's charge or supplemental charge on malice, he now complains that it was error for the judge not to inform the jury when defining the three prongs of malice, that provocation is a mitigating factor which may negate malice. Upon our review of the charge as a whole, *Commonwealth* v. *Gilchrist*, 413 Mass. 216, 218 (1992), we find no error. The judge properly defined malice for the jury and informed them that adequate and reasonable provocation or sudden combat would denote manslaughter, not murder. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 452-453 (1984) (while judge did not specifically state that provocation and malice are mutually exclusive, he properly defined manslaughter as the unlawful killing of another without malice). The "law does not require repetition of the same thought at each turn." *Commonwealth* v. *Peters*, 372 Mass. 319, 324 (1977).

In his supplemental charge to the jury in response to the jury's request for a definition of malice, he repeated the definition given in his original charge and reminded the jury that his response was not a substitute for the totality of the instructions previously given, but must be considered in conjunction with those instructions. See *Commonwealth* v. *Hicks*, 22 Mass. App. Ct. 139, 144-145 (1986).

Viewing the charge as a whole, no reasonable juror could have been misled in distinguishing between those elements which the Commonwealth had to prove to establish murder and those that must be proved to establish manslaughter. *Commonwealth* v. *Doucette*, 391 Mass. at 451.

*Judgment affirmed.*

*James L. Sultan* for the defendant.
*Mary O'Neil*, Assistant District Attorney, for the Commonwealth.