NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-876                                            Appeals Court

COMMONWEALTH  vs.  RONALD BOTELHO, JR.

No. 14-P-876.

Bristol.     April 21, 2015. - August 10, 2015.

Present: Fecteau, Agnes, & Sullivan, JJ.


Motor Vehicle, Operating under the influence. Hearing-Impaired
    Person. Intoxication. Evidence, Intoxication, Argument by
    prosecutor. Practice, Criminal, Defendant's decision not
    to testify, Instructions to jury, Argument by prosecutor.



Complaint received and sworn to in the Fall River Division
of the District Court Department on July 13, 2012.

The case was tried before Edmund C. Mathers, J.


Paula Lynch for the defendant.
Rachel W. van Deuren, Assistant District Attorney, for the
Commonwealth.


SULLIVAN, J.  The defendant, Ronald Botelho, Jr., appeals

from his conviction of operating while under the influence of

alcohol (OUI), second offense. See G. L. c. 90, § 24(1)(a)(1).

At trial the sole issue for the jury was whether the defendant

was intoxicated, or whether his conduct and demeanor were the

product of a hearing impairment, compounded by the force of a collision.  The defendant contends that the trial judge's inadvertent failure to heed his request to instruct the jury regarding his decision not to testify, coupled with the prosecutor's closing argument, created a substantial risk of a miscarriage of justice.  We reverse.

Background.  On July 12, 2012, between 9:30 P.M. and 10:00 P.M., Officer Keith Strong responded to a dispatch concerning a single vehicle accident at the intersection of Second Street and Plymouth Avenue in Fall River.  Upon arriving at the scene, the officer found the defendant behind the steering wheel of a vehicle that had struck a utility pole.  The vehicle had sustained significant front end damage and the driver's side air bag had deployed.  After the defendant got out of the vehicle he told the officer "that the stabilizer on his truck broke and that's what caused" the accident.  When asked if he had been drinking, the defendant said, "No."

The Commonwealth's case was based on the officer's observations at the scene.  The officer testified that the defendant's speech was slurred, and that he had red and bloodshot eyes, smelled of alcohol, and stumbled when he got out of the vehicle.  The officer demonstrated two field sobriety tests; the defendant began to perform each test before the instructions were completed.  The officer deemed that the

defendant failed the two field sobriety tests both because he stumbled, and because he "wasn't listening" and failed to follow directions.  The defendant was arrested and charged with OUI and negligent operation of a motor vehicle.

The defendant's case was presented through the cross-examination of the arresting officer and the testimony of two experts.  The officer testified that he was unaware at the time of the accident that the defendant was hearing impaired,[1] and that he was unfamiliar with the defendant's normal speech pattern.  The defense presented two experts who treated the defendant before the accident, a clinical audiologist who had tested the defendant in 2007 and a hearing instrument specialist who fitted the defendant for hearing aids in 2007 and 2012.  Both testified that the defendant suffered from "severe to profound hearing loss" -- ninety percent in one ear and sixty-four percent in the other.  The hearing loss was accompanied by a speech impairment that caused the defendant's speech to sound slurred.  While the officer testified that he thought the defendant could hear him and that the defendant responded to questions, both experts opined that the defendant would not have been able to hear and understand the officer at the scene of the

---

[1] The officer asked at the accident scene if the defendant had any medical conditions, and the defendant said, "No." Medical personnel arrived at the scene, and the defendant declined treatment.

accident from a distance, such as when being given instructions regarding the field sobriety tests. In addition, the audiologist also testified that the defendant's hearing loss could have been exacerbated by the collision. The audiologist also testified that the defendant had some reported balance issues prior to the accident and that equilibrium and balance issues frequently accompany hearing loss. Defense counsel also elicited testimony from the officer that the air bag deployed in the defendant's face, and that a white powder was released when the air bag deployed. This, the defense argued, accounted for the red eyes and an odor on his person and in the vehicle.

The jury returned verdicts of guilty of operating while under the influence and negligent operation of a motor vehicle. The judge granted the defendant's renewed motion for required finding pursuant to Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995), on the charge of negligent operation of a motor vehicle and accepted the defendant's stipulation to the second offense portion of the remaining charge.

Discussion. 1. Instructions. The defendant contends that the judge erred in failing to instruct the jury that they could not draw an adverse inference from the defendant's election not to testify. The Commonwealth maintains that the burden of proof

and presumption of innocence instructions were adequate despite the absence of an adverse inference instruction.[2]

When a defendant requests an instruction regarding his election not to testify, the trial judge must give an instruction that minimizes the risk that the jury will draw an adverse inference from his election. Carter v. Kentucky, 450 U.S. 288, 305 (1981). The Fifth Amendment to the United States Constitution requires this protection because "a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify. Th[is] penalty [may be] exacted . . . by adverse comment on the defendant's silence; the penalty may be just as severe when there is no adverse comment, but when the jury is left to roam at large with only its untutored instincts to guide it, to draw from the defendant's silence broad inferences of guilt. Even without adverse comment, the members of the jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence." Id. at 301.

---

[2] The defendant also maintains that counsel was ineffective in failing to object to the omission of the instruction. Because the analysis of prejudice under an ineffective assistance claim is substantially the same as the analysis of prejudice under the substantial risk of miscarriage of justice standard, we consider the claims together. See Commonwealth v. Lavoie, 464 Mass. 83, 89, cert. denied, 133 S. Ct. 2356 (2013).

The defendant submitted a written request for jury instructions regarding his election not to testify. The judge rejected the instructions requested[3] because they were significantly more detailed than the Model Jury Instructions for Use in the District Court.[4] The judge did, however, agree to give an instruction regarding the defendant's decision not to testify. Despite this assurance, the judge instructed the jury regarding the burden of proof and the presumption of innocence, but did not give an instruction regarding the defendant's election not to testify.[5] The defendant did not draw the

---

[3] The judge was not limited to the specific language requested by the defendant. See Commonwealth v. Carrion, 407 Mass. 263, 270 (1990); Commonwealth v. Gilchrist, 413 Mass. 216, 218 (1992).

[4] The relevant model instruction states:

"You may have noticed that the defendant did not testify at this trial. The defendant has an absolute right not to testify, since the entire burden of proof in this case is on the Commonwealth to prove that the defendant is guilty. It is not up to the defendant to prove that he (she) is innocent. The fact that the defendant did not testify has nothing to do with the question of whether he (she) is guilty or not guilty. You are not to draw any adverse inference against the defendant because he (she) did not testify. You are not to consider it in any way, or even discuss it in your deliberations. You must determine whether the Commonwealth has proved its case against the defendant based solely on the testimony of the witnesses and the exhibits."

Instruction 3.600 of the Criminal Model Jury Instructions for Use in the District Court (2009).

[5] The judge instructed the jury as follows:

omission to the judge's attention. Because the defendant failed to object to the instructions given, "we review to determine whether the alleged error created a substantial risk of a miscarriage of justice." Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 544 (2008).

In assessing the legal adequacy of the instructions given, we look to the charge as a whole to determine if "the charge satisfied the requirement for an instruction minimizing the danger that the jury will draw an adverse inference from the defendant's decision not to testify." Commonwealth v. Gilchrist, 413 Mass. 216, 219 (1992), citing Commonwealth v. Thomas, 400 Mass. 676, 679 (1987).

The instruction given was deficient in two interrelated respects. Although the instruction stated that the defendant did not have to produce any evidence at trial, the instruction did not explicitly communicate the defendant's Fifth Amendment right not to testify as a witness in his own defense. The instruction also failed to convey to the jury that no adverse

---

"This burden of proof never shifts. The Defendant is not required to call any witness, produce any evidence since he is presumed to be innocent. The presumption of innocence stays with the Defendant unless and until the evidence convinces you unanimously as a jury that the Defendant is guilty beyond a reasonable doubt."

The judge also gave a similar instruction in his preliminary instructions to the jury.

inference may be drawn from the defendant's failure to testify. "[T]he failure to limit the jurors' speculation on the meaning of . . . silence, when the defendant makes a timely request that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of the privilege."  Carter, 450 U.S. at 305.

The Commonwealth argues that the instruction regarding the burden of proof and presumption of innocence were sufficient to convey these principles.  This argument was considered and rejected in Carter.  "Without question, the Fifth Amendment privilege and the presumption of innocence are closely aligned. But these principles serve different functions, and we cannot say that the jury would not have derived significant additional guidance from the instruction requested."  Id. at 304 (quotation omitted).  See Commonwealth v. Torres, 17 Mass. App. Ct. 676, 677 (1984) (reversing for failure to give adverse inference instruction); Commonwealth v. Green, 25 Mass. App. Ct. 751, 753-755 (1988) (concluding justice had not been done where, among other errors, judge failed to give adverse inference instruction).

This case stands in contrast to those relied on by the Commonwealth in which the strength of the instructions regarding the right not to testify ameliorated the omission of an adverse inference instruction.  For example, in Gilchrist, supra at 218,

the judge instructed the jury that "[t]he Defendant does not have to testify."  The Supreme Judicial Court concluded that the instruction -- absent here -- adequately "minimiz[ed] the danger the jury [would] draw an adverse inference from the defendant's decision not to testify."  Id. at 219.

Similarly, in Commonwealth v. Feroli, 407 Mass. 405, 409 (1990), the defendant requested that the judge instruct the jury that no adverse inference could be drawn from the fact that the defendant elected not to testify.  The judge instructed that "the defendant ha[d] the absolute right to remain passive and require the Commonwealth to prove its case beyond a reasonable doubt, and in so doing he may elect to participate by way of examination of the evidence presented by the Commonwealth or not elect to participate to that extent."  Id. at 410.  The Supreme Judicial Court concluded that while it would have been preferable to include the "'no adverse inference' language," the omission did not create a substantial likelihood of a miscarriage of justice[6] because "the judge emphasized that the defendant's right not to testify was 'absolute.'"[7]  Ibid.

---

[6] In Feroli, supra at 407, the court reviewed the judge's failure to give the "no adverse inference" instruction under G. L. c. 278, § 33E.

[7] Notably, the Supreme Judicial Court did not approve the instruction given in Feroli.  This instruction was approved in Commonwealth v. Powers, 9 Mass. App. Ct. 771 (1980), before the United States Supreme Court decision in Carter.  In Feroli,

By contrast, the instruction here did not explicitly state that the defendant had an "absolute" right not to testify. The preliminary instruction included the statement that "the defendant may present evidence in his behalf if he wishes to do so, but he is not obliged to do so." The final instruction said only that he was not "required to call any witness." In the absence of an adverse inference instruction, the suggestion that the defendant may present evidence on his behalf opened the door to speculation as to why he had not. "No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum." Carter, 450 U.S. at 303.

2. Prejudice. In determining whether the failure to give an instruction created a substantial risk of a miscarriage of justice, we consider "(1) whether the Commonwealth presented a strong case against the defendant; (2) whether the error is sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error; and (3) whether it can be inferred from the record that counsel's failure to object was not simply

decided after Carter, the court passed on the issue of the propriety of the instruction, and reached a result on the basis that the defendant was not prejudiced.

a reasonable tactical decision." Dussault, 71 Mass. App. Ct. at 544 (quotations omitted). The defendant requested the instruction, so it is clear from the record that the failure to object was not strategic. We therefore look to the other two factors, the strength of the Commonwealth's case and the context of the trial.

The evidence of the defendant's guilt was not overwhelming. Contrast id. at 543-544. No witness saw the accident or saw the defendant driving before the accident. The defendant consistently stated that he had not been drinking. There was no alcohol in the vehicle and no testimony that he had been drinking. The arresting officer testified to many observations consistent with alcohol intoxication, such as slurred speech and poor balance. However, the defendant provided an alternative explanation -- profound hearing loss, a speech impairment, and previous balance problems derived from the hearing loss, all compounded by the collision and the deployment of the air bag to the head. The officer also testified that the defendant had red eyes and smelled of alcohol, but cross-examination provided an alternative theory, namely that the chemicals released when the air bag deployed caused the reddened eyes and the odor.

Furthermore, the officer's assertion that the defendant smelled of alcohol and the defendant's denials presented a question of credibility for the jury. Where the jury could have

been aided in the resolution of a credibility question by the defendant's testimony, the absence of the requested instruction takes on heightened significance. See Green, 25 Mass. App. Ct. at 753-755.

More importantly, the failure to give the requested instruction was highly significant in the context of the trial. There was a conflict in the evidence regarding the inferences to be drawn from the defendant's slurred speech. It is difficult to imagine a case in which the jury would have a greater interest in "hearing" the defendant. In this context, the risk that the jury would draw an adverse inference from the failure to testify is particularly high. Any prejudice attendant to the failure to give the instruction was exacerbated in the unique circumstances of this case.

3. Closing argument. The risk of prejudice was compounded by the prosecutor's closing argument. Arguing that the defendant was in fact intoxicated at the time of the accident, the prosecutor stated, "[t]he issue was is he intoxicated that night. The only testimony you heard from that night was Officer Strong's." "[P]rosecutorial comments on the defendant's silence at times when the defendant is constitutionally entitled to remain silent, such as . . . at trial, are impermissible." Commonwealth v. Teixera, 396 Mass. 746, 752 (1986). The defendant contends that this statement implicitly suggested to

the jury "that the defendant had an affirmative duty to counter the Commonwealth's evidence against him." Commonwealth v. Johnson, 463 Mass. 95, 113 (2012). The Commonwealth maintains that this argument was fair comment on the evidence in the context of the trial as a whole.

"Whatever the prosecutor's intent, if his remarks were reasonably susceptible of being interpreted as a comment on the defendant's failure to take the stand, they would be improper." Commonwealth v. Pena, 455 Mass. 1, 19 (2009), citing Commonwealth v. Gouveia, 371 Mass. 566, 571 (1976). See Mass. G. Evid. § 1113(b)(3)(E) (2015) (setting forth what is impermissible in closing arguments in criminal cases). By this standard, the closing argument here was improper. The prosecutor's use of the word "only" coupled with the twice repeated reference to "that night" served to focus the jury's attention on the defendant's failure to testify, since the interactions between the defendant and the arresting officer at the scene that night were the sole basis of the Commonwealth's case.[8]

---

[8] Earlier in his closing argument, the prosecutor also stated, "his vehicle was driven into a pole, whether it's because of a mechanical malfunction, which we have no evidence of today. No evidence was introduced regarding that or whether it was because he was under the influence." This argument was made in response to defense counsel's closing argument, in which he argued forcefully that the vehicle had been towed by the police and that the Commonwealth had failed to examine the

The prosecutor's remarks also exacerbated the prejudice attendant to the judge's failure to give the adverse inference instruction. Conversely, the absence of an adverse inference instruction also failed to "neutralize[] any prejudice produced by the prosecutor's" statement or "mitigate[] any suggestion of burden shifting that may have arisen." Johnson, supra at 114. See Pena, supra at 19. Contrast Commonwealth v. Russo, 49 Mass. App. Ct. 579, 583 (2000) (no substantial risk due to closing argument where evidence of guilt was strong and appropriate curative instructions were given); Dussault, 71 Mass. App. Ct. at 545 (evidence overwhelming and no comment on silence in closing argument).[9]

Conclusion. In the circumstances presented, the unfortunate synergy between the failure to give the requested instruction and the prosecutor's closing argument leads to a plausible inference that the jury's result might have been otherwise but for the errors. For this reason the judgment is reversed and the verdict is set aside.

So ordered.

---

vehicle or the stabilizer. However, the prosecutor's response was not an explanation why the police did not examine the vehicle. Instead, the argument may be interpreted to suggest that the defendant should have testified to the condition of the vehicle or produced evidence of the condition of the vehicle.

[9] We do not address the remaining claims on appeal as error, if any, is unlikely to be repeated on retrial.