NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-989

COMMONWEALTH

vs.

GEORGE E. MANEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his conviction of operating a motor vehicle while under the influence of liquor, third offense, and from the denial of his motion for a new trial on grounds of ineffective assistance of counsel. He raises two issues: (1) that the Commonwealth's closing argument, which referenced the defendant's right not to testify, created a substantial risk of a miscarriage of justice; and (2) that the court erred in denying the motion for new trial without first holding an evidentiary hearing, where the defendant raised issues regarding counsel's failure to present an expert witness on the effects of sleep deprivation. We affirm both the

defendant's conviction and the denial of the motion for a new trial.

Background. At approximately 3:20 A.M. on February 24, 2019, an Ipswich police officer encountered a plow truck, still running and parked on the side of the road. The officer observed the defendant, George Maney, reclined and sleeping in the driver's seat. The officer tapped on the truck's window "approximately a dozen times" to get the defendant's attention, to which the defendant woke briefly several times and then fell back asleep. When the defendant eventually woke and opened his window, the officer testified that he was "hit with a wave of the smell of intoxicating liquor." The officer further testified that the defendant, upon awakening, had "bloodshot and glassy" eyes, and that the defendant's speech was "thick-tongued" and "slurred." The officer also observed an opened Four Loko can in the car's cupholder, which was half full.

The officer instructed the defendant to exit the car, whereupon the defendant appeared unsteady on his feet and smelled of alcohol. The officer formed the opinion that the defendant was "heavily intoxicated," and placed the defendant under arrest.

At trial, the defense called one witness, the defendant's girlfriend, who testified that she was with the defendant the

night before he was arrested. The girlfriend testified that when the defendant arrived at her house at around 12:30 $\underline{A}$.$\underline{M}$., they decided to have a drink in the parking lot, and that she was the person who drank half of the Four Loko that was found in the defendant's car when he was arrested over twenty-four hours later. The girlfriend also testified that she had spilled some of the drink in the car. Lastly, she testified that the defendant had slept only a "few" hours in the thirty-six to forty-eight hours before the arrest.

The defendant's closing argument primarily focused on how quickly the police officer formed his opinion that the defendant was heavily intoxicated. Defense counsel argued that, had the police officer spent "more than a minute" with the defendant, he would have discovered that the drink, and the odor in the car, were caused by the defendant's girlfriend, and that the defendant's appearance and actions were the product of exhaustion and not intoxication.

In turn, the Commonwealth's closing argument focused, in part, on challenging the credibility of the defendant's girlfriend. To this point, the prosecutor made the following comments to which there was no objection:

> Now, you did hear from the defendant's girlfriend, and I want to be very clear: the defendant -- and you'll hear from the judge -- has an absolute right not to testify; he

doesn't have to put on a case; he doesn't have to present any evidence.  The burden rests entirely on the Commonwealth.  But ladies and gentlemen, when someone decides to put on evidence, it's still subject to scrutiny.

The jury found the defendant guilty of operating a motor vehicle while under the influence of alcohol.  The defendant was sentenced to two and one-half years in the house of correction, eighteen months to be served, with the balance suspended for five years of probation.

In 2024, over four years after the trial, the defendant filed a motion for a new trial based on trial counsel's alleged failure "to properly investigate [the defendant]'s medical issues," which allegedly could have provided an alternative explanation for the defendant's symptoms and behavior that morning.  In support of his motion the defendant relied primarily on an affidavit he submitted from Dr. Christopher Rosenbaum, an emergency medicine physician and medical toxicologist at Mass General Brigham Newton-Wellesley Hospital.  Dr. Rosenbaum's affidavit stated that the defendant's "documented medical history of sleep apnea, asthma, and sleep deprivation would have combined to impair his level of alertness and consciousness."  The defendant also submitted affidavits from both of his trial attorneys, in which they averred that the defendant had inquired about hiring a "sleep expert" before

trial. One of the attorneys also stated that Dr. Rosenbaum's evidence "would have been helpful."

The motion judge denied the motion without holding an evidentiary hearing. The judge gave "limited credit" to Dr. Rosenbaum's affidavit, noting that it did "not address critical evidence . . . such as the open container of alcohol in the car and the overwhelming odor of alcohol" (footnote omitted). The defendant appeals.

Discussion. 1. Closing argument. The defendant argues that the prosecutor impermissibly shifted the burden of proof by commenting in her closing argument that "the defendant . . . has an absolute right not to testify; he doesn't have to put on a case; he doesn't have to present any evidence." Because the defendant did not object to the prosecutor's statement at trial, we review the argument for error and, if established, to determine whether the error created a substantial risk of a miscarriage of justice such that "we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).

As a general rule, prosecutors "cannot make comments that shift the burden of proof from the Commonwealth to the

defendant." Commonwealth v. Johnson, 463 Mass. 95, 112 (2012), quoting Commonwealth v. Amirault, 404 Mass. 221, 240 (1989). Such burden shifting arises when "a prosecutor offers direct comment on the defendant's decision not to testify," as this erroneously signals to the jury that the defendant has a duty to present evidence of their innocence, "thereby lessening the Commonwealth's burden to prove every element of a crime" (quotation and citation omitted). Johnson, supra.

Prosecutors are permitted, however, to emphasize weaknesses in the defense's case even if, in doing so, they "prompt some collateral or passing reflection on the fact that the defendant declined to testify." Commonwealth v. Feroli, 407 Mass. 405, 409 (1990). "The question is whether the challenged remark, when viewed 'in the context of the entire argument,' is 'directed more at the general weakness of [the defendant's] defense than toward the defendant's own failure to testify.'" Id., quoting Commonwealth v. Storey, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). "[U]nless a prosecutor's comments are of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify, they are not prejudicially unfair." Commonwealth v. Smallwood, 379 Mass. 878, 892 (1980), quoting

United States v. Armedo-Sarmiento, 545 F.2d 785, 793 (2d Cir.
1976), cert. denied, 430 U.S. 917 (1977).

Here, viewed in the context of the entire argument, we are
satisfied that the jury would not have understood the
prosecutor's remarks as directed at the defendant's failure to
testify.  First, the context for the prosecutor's statement was
her discussion of the girlfriend's testimony, which defense
counsel had just highlighted.  The comment that the defendant
did not have to testify thus arose in the context of challenging
(appropriately) the evidence that the defendant did adduce.[1]
Second, the prosecutor's statement of the law was entirely
accurate, and even more to the point, defense counsel had
already requested that the judge instruct the jury that the
defendant had a right not to testify, even though that
instruction would necessarily draw the jury's attention to the
fact that the defendant did not testify.  Cf. Commonwealth v.
Elliot, 87 Mass. App. Ct. 520, 525 (2015) (closing argument
permissible where prosecutor "followed up the challenged remark

---

[1] The prosecutor's closing argument specifically called
attention to the discrepancies between the girlfriend's
testimony and the evidence found at the scene of the arrest.
These discrepancies included the girlfriend's statement on
cross-examination that she left a green can of Four Loko in the
passenger's side cupholder of the truck.  The officer testified
that the can was, in fact, found in the driver's side cupholder,
and the exhibit entered into evidence was an orange can.

by confirming that the defendant had no duty to produce evidence at trial").  Under those circumstances the prosecutor's comment added little, if anything, to what the jury in any event would hear at the defendant's request.

The defendant contends, however, that the "timing and context" of the prosecutor's comments -- that is, before the judge instructed the jury that they may not consider the defendant's silence in any way -- reveal their "true purpose" of inviting the jury to draw an adverse inference from the defendant's silence.  We do not agree.  To begin, we find it relevant that, despite the allegedly "gratuitous nature" of the comments, there was no objection to the prosecutor's statement at trial.  See Commonwealth v. Whitman, 453 Mass. 331, 348 (2009) ("The absence of objection, while not dispositive, may suggest that the manner and tone of the argument were not unfairly prejudicial").  Moreover, the defendant's argument relies primarily on Justice Stevens's dissenting opinion in Lakeside v. Oregon, 435 U.S. 333, 345 (1978) (Stevens, J., dissenting), in which Justice Stevens suggested that juries should not be reflexively instructed about the defendant's right not to testify, as the instruction might have the opposite effect of causing the jury to consider the failure.  The defendant's new-found concern about references to the

defendant's right not to testify rings hollow, however, in light of the fact that at trial, defense counsel specifically asked that the jury be instructed on the defendant's right not to testify.

Finally, the defendant argues that, by referencing the defendant's right not to testify, the prosecutor also violated a particular Massachusetts statute, G. L. c. 278, § 23. We do not agree that G. L. c. 278, § 23, provides additional or different protections with respect to comments on the defendant's failure to testify. General Laws c. 278, § 23, provides, in pertinent part, that "[a]t the trial of a criminal case . . . the fact that the defendant did not testify <u>at any preliminary hearing in the first court</u> . . . shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer" (emphasis added). The defendant argues that the statute creates a bright-line rule that a prosecutor may not refer to or comment on the defendant's failure to testify. We disagree. Under the statute's plain language, G. L. c. 278 § 23, applies to a prosecutor's references to a failure to testify at a "preliminary hearing in the first court." Here, the prosecutor's closing argument did not refer to or comment on the defendant's failure to testify at a preliminary hearing of any sort. Moreover, and in any event, we would not construe G. L.

c. 278, § 23, as adding materially to the existing law discussed above, which the prosecutor's comment did not violate. See Feroli, 407 Mass. at 409; Commonwealth v. Sherick, 23 Mass. App. Ct. 388, 342 n.5 (1987).[2]

While it is generally best for prosecutors to steer clear of any reference to the defendant's right not to testify, we discern no error here, where the prosecutor made an accurate statement of law that was also mirrored in the judge's instructions. See Smallwood, 379 Mass. at 892-893 (no error where, after alleged allusion to defendant's failure to testify, judge gave "complete and emphatic instructions to the jury" that defendant need not present any evidence). Because the prosecutor's argument did not constitute error, we need not determine whether the argument created a substantial risk of a miscarriage of justice. Accordingly, we affirm the conviction.

2. Motion for new trial. A motion for a new trial may be denied without an evidentiary hearing "if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001). "In

_____

[2] In Sherick, 23 Mass. App. Ct. at 342 n.5, we explained that G. L. c. 278, § 23 -- having been enacted before "constitutional guarantees [were] extended by interpretation to protect a defendant's 'silence' in the early stages of the criminal process" -- had been "largely if not altogether overtaken by those guarantees."

determining whether a substantial issue exists, 'a judge considers the seriousness of the issues raised and the adequacy of the defendant's showing on those issues'" (citation omitted). Commonwealth v. Upton, 484 Mass. 155, 162 (2020). The question here is whether the defendant presented sufficient credible information that his counsel's performance "fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that this 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Licata, 412 Mass. 654, 661 (1992), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). We review a judge's decision for an error of law or other abuse of discretion. See Commonwealth v. Tavares, 491 Mass. 362, 365 (2023).

The defendant argued that his trial counsel rendered ineffective assistance by deciding not to obtain or to bring forth evidence related to the defendant's medical history, "including [the defendant's] history of asthma and sleep deprivation, which later led to a diagnosis of sleep apnea." The thrust of the defendant's argument was that expert testimony as to the defendant's underlying medical conditions could have better explained the defendant's appearance and behavior at the time of the arrest.

Here, the motion judge did not abuse his discretion in concluding that Dr. Rosenbaum's affidavit did not raise a substantial question as to counsel's ineffectiveness. Dr. Rosenbaum's affidavit states that the defendant had a "documented medical history" of sleep apnea, asthma, and sleep deprivation that "could have explained" how the defendant appeared and behaved the night he was arrested. Dr. Rosenbaum does not opine that these conditions were the cause of the defendant's behavior, so the affidavit provides weak evidence, at best. Moreover, Dr. Rosenbaum's affidavit does not address other highly pertinent evidence that "could have explained" the defendant's behavior -- the evidence suggesting the defendant's alcohol consumption, from the time of the arrest. The affidavit does not contain any reference to the open container of alcohol in the defendant's truck, or to the "overwhelming" odor of alcohol when police encountered the defendant. The affidavit also fails to address the officer's testimony that the defendant, after exiting the truck, appeared "unsteady" on his feet.

Dr. Rosenbaum's affidavit contained other substantial deficiencies as well. For example, there is no indication that Dr. Rosenbaum reviewed the entirety of the defendant's medical records, or that Dr. Rosenbaum personally examined the

defendant. The affidavit relies on a review of only those medical records that the defendant's posttrial counsel provided. Moreover, although Dr. Rosenbaum's affidavit avers that he worked as an attending physician and medical toxicologist, it references no particular expertise related to issues of sleep deprivation or sleep disorders. See Commonwealth v. Goodreau, 442 Mass. 341, 348-349 (2004) ("If the theory of the motion, as presented by the papers, is not credible or not persuasive, holding an evidentiary hearing . . . will accomplish nothing").

Finally, we agree with the motion judge that the suggested expert testimony would have posed serious concerns for the defense, where such testimony could well have exposed the weaknesses in the defendant's case through the cross-examination of his own expert. The expert likely would have been cross-examined regarding the evidence of alcohol consumption at the scene, including the very strong odor of alcohol coming from the defendant. The expert also could have been subject to cross-examination on how alcohol consumption intensifies the effects of sleep deprivation. In cases that involve strategic or tactical decisions, the defendant must show that these decisions were "manifestly unreasonable," and not merely unsuccessful (citation omitted). Commonwealth v. White, 409 Mass. 266, 273

(1991).  Here, the motion judge committed no error in denying the motion for a new trial.

                              Judgment affirmed.

                              Order denying motion for new
                                 trial affirmed.


                              By the Court (Neyman,
                                 Ditkoff & Englander, JJ.[3]),

                              Clerk


Entered:  November 4, 2025.

---

[3] The panelists are listed in order of seniority.